**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Terry Lee SCHAFER, Defendant-
Appellant.**

**No. 71–1004.**

United States Court of Appeals,
Ninth Circuit.

June 5, 1972.

John S. Edmunds, Chief Deputy Public Defender (argued) Honolulu, Hawaii, for appellant.

Joseph M. Gedan, Asst. U. S. Atty. (argued) Honolulu, Hawaii, for appellee.

Before KOELSCH, BROWNING and DUNIWAY, Circuit Judges.

KOELSCH, Circuit Judge.

This is an appeal by Terry Lee Schafer from a judgment convicting her of unlawfully possessing a "depressant stimulant drug," namely Lysergic Acid Diethylamide (LSD) in violation of 21 U.S. C. § 360a(c) (1), 21 U.S.C. § 331(q) (3) (A). The questions all concern the validity under the Fourth Amendment of a warrantless administrative search which revealed appellant's possession of the drug. The facts are undisputed.

Pursuant to authority expressly granted by the Plant Quarantine Act (7 U.S.C. § 161) the Secretary of Agriculture has declared quarantined the State of Hawaii "to prevent the spread of [certain enumerated] plant diseases and insect infestations . . . which are new to or not widely prevalent or distributed within and throughout the United States. . . ." 7 C.F.R. § 318.-13. He further has decreed movement of any of the designated horticultural products "from Hawaii into the continental United States" to be impermissible without a prior inspection.

The Secretary further provided for the inspection of "all baggage and other personal effects of passengers . . . of . . . aircraft moving from Hawaii . . . to ascertain if they contain any of the articles or plant pests prohibited movement by the quarantine. . . ." It was further provided that "no baggage or other personal effects of passengers . . . from Hawaii shall be released until said effects have been inspected and passed." 7 C.F.R. § 318.-13-12(a).

Appellant Schafer was the subject of such a warrantless search immediately before preparing to board an aircraft for passage to the mainland United States. In one of her handbags a quarantine inspector discovered a grass-like plant substance he believed to be marihuana. He immediately called the local police, who identified the suspected substance as marihuana and placed Schafer under arrest. Then, looking further

into the bag, they discovered LSD tablets; these, and additional tablets discovered in the ensuing search of another of Schafer's bags, form the basis for the charge which led to her conviction.

The warrantless search of appellant Schafer's luggage was expressly authorized by the regulation which, in turn, was within the Secretary's power under 7 U.S.C. §§ 150ee and 162. The only substantial question is whether the search was prohibited by the Fourth Amendment.

### 1. *The validity of the warrantless search provision.*

■ The proposition is firmly established that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." Camara v. Municipal Court, 387 U.S. 523, 529, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967).

■ However, we conclude that the search provisions in the statutes and regulation under consideration on this appeal do not run afoul of the Fourth Amendment. As the Court said in *Camara, supra,* "[T]he question is not whether the public interest justifies the type of search in question, but whether the authority to search should be evidenced by a warrant, which in turn depends in part upon whether the burden of obtaining the warrant is likely to frustrate the governmental purpose behind the search." 387 U.S. at 533, 87 S.Ct. at 1733. In that case, the Court concluded that requiring building inspectors to obtain search warrants imposed no hardship on the conduct of their mission. There was "no compelling urgency to inspect at a particular time or on a particular day," [387 U.S. at 539, 87 S.Ct. at 1736] as the property to be searched was a building, obviously not a thing susceptible to speedy removal. Here, however, the time element is a major consideration. The objects of the

search (quarantined fruits, vegetables, and plants) can easily be transported out of Hawaii to the continental United States by departing tourists. The effect of such movement on agricultural crops in the mainland states could be serious, as each of the quarantined items may carry some form of plant disease or insect which could destroy crops in the other areas. The purpose of the quarantine is to avoid these effects by preventing the movement of the potentially dangerous plant substances. We think a search warrant requirement would "frustrate" the purpose of these inspections, because of the time delays inherent in the search warrant mechanism. Unless all departing passengers could be detained while warrants could be obtained, the goods would be moved before the warrants could issue. Whereas, in *Camara* there was no suggestion that "fire, health, and housing code inspection programs could not achieve their goals within the confines of a reasonable search warrant requirement," [387 U.S. at 533, 87 S.Ct. at 1733] we are persuaded that requiring warrants for agricultural inspections of this type would effectively cripple any meaningful quarantine. See United States v. Biswell, 405 U.S. ——, 92 S.Ct. 1593, 31 L.Ed.2d 87 (1972).

### *Probable Cause*

Appellant further argues that, the warrant issue aside, any inspection of her luggage was invalid under the Fourth Amendment unless the inspector had probable cause to believe that she was, in fact, carrying any of the quarantined articles. We disagree.

■ "The test of 'probable cause' required by the Fourth Amendment can take into account the nature of the search that is being sought." Frank v. Maryland, 359 U.S. 360, 383, 79 S.Ct. 804, 817, 3 L.Ed.2d 877 (1959) (Douglas, J., dissenting). The Court in *Camara* read this language to mean that a "criminal" standard of probable cause would not be imposed upon administra-

tive inspections. "In determining whether a particular inspection is reasonable—and thus in determining whether there is probable cause to issue a warrant for that inspection [where a warrant is required]—the need for the inspection must be weighed in terms of [the] reasonable goals of code enforcement." 387 U.S. at 535, 87 S.Ct. at 1734. In that case, it was noted that the only effective means of enforcing compliance with building codes would be by "routine periodic inspections of all structures." 387 U.S. at 535–536, 87 S. Ct. at 1734. This meant, of course, that the decision to inspect a given area would be based upon the city's "appraisal of conditions in the area as a whole, not on its knowledge of conditions in each particular building." *Id.* The lack of particular knowledge on the part of inspectors was not considered by the Court to mean that no probable cause existed to justify the area inspections. "If a valid public interest justifies the intrusion contemplated, then there is probable cause. . . ." 387 U.S. at 539, 87 S.Ct. at 1736.

█ The effectiveness of an agricultural quarantine depends upon broad coverage of the inspections used to enforce it. Quarantine inspectors determine the need to inspect at a particular point on the likelihood that persons departing the quarantine area at that point will be carrying one or more of the plant substances on the quarantine list, not on any particular knowledge about particular individuals. Moreover, the decision to inspect is not "subject to the discretion of the official in the field." 387 U.S. at 532, 87 S.Ct. at 1733. In view of the fact that a quarantine inspection is not a search "which has as its design the securing of information . . . which may be used to effect a further deprivation of life, liberty or property," [Frank v. Maryland, *supra*, 359 U.S. at 365, 79 S.Ct. at 808], and the fact that "it is doubtful that any other canvassing technique would achieve acceptable results," [*Camara, su-*

*pra*, 387 U.S. at 537, 87 S.Ct. at 1735], we think that the general administrative determination of the necessity for these baggage searches at the Honolulu airport satisfies the "probable cause" requirements of *Camara.*

*The admission of the drugs as evidence*

█ Appellant contends that even if there was probable cause to inspect her bags, the drugs discovered in the search should be inadmissible because of the "cooperation" between the quarantine inspector and the local police. She disclaims any suggestion that the quarantine inspection was used as a pretext to search for criminal law violations generally, or that the inspector in this instance conducted his inspection for quarantined agricultural products in an impermissible manner. The "cooperation" which she argues was impermissible was the inspector's calling the police after he discovered marihuana in one of appellant's bags. Appellant's reliance on United States v. Abel, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), is misplaced. Nothing in the record suggests that the administrative search in this case was "employed as an instrument of criminal law enforcement to circumvent the latter's legal restrictions . . . ." *Abel, supra*, 362 U.S. at 230, 80 S.Ct. at 692. If the search was under proper authority and was properly conducted, the reporting of any inadvertently discovered criminal evidence to police does not constitute unlawful official conduct within the rule of *Abel, supra.*

█ We need not decide whether the police search of another of appellant's bags, which was lying on a counter near the place where she was arrested, was improper. The bag in which the agricultural inspector found marihuana also contained an ample quantity of LSD tablets, sufficient to sustain the government's burden of proof in this nonjury trial. Thus, the admission of evidence from the subsequent search of the other bag, even if error, was harmless.

The judgment is affirmed.