[Crim. No. 22789. Second Dist., Div. Two. Dec. 30, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDOLPH TIFFANY, Defendant and Appellant.

**COUNSEL**

John R. Sheehan for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler and S. Clark Moore, Assistant Attorneys General, Russell Iungerich and Cynthia S. Waldman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.—** ■ Appellant Tiffany on October 2, 1971, in the process of boarding an airplane bound for San Francisco, alerted a magnetometer through which he was required to pass. Accosted by a deputy marshal who inquired whether he had "any guns, knives, weapons or tear gas," he was asked to "step over to the table immediately adjacent to the area for inspection of your carry on articles."

In reply to the deputy's question whether he had guns, appellant said no. No contraband or metal was found. As the deputy replaced the removed articles into the bag from which they were emptied appellant said to the deputy "It is a good thing you did not find my machine gun in there."

The deputy without frisking appellant demanded that appellant remove a small plastic opaque box four and one-half inches in length by three and one-half inches width, one-half inch thick visible in appellant's breast coat pocket. Appellant did so, opened it at the deputy's request and the deputy noticed what he thought were two empty shell casings which looked like bullets but were the disassembled parts of a cigarette holder. As the deputy reached for the box, it fell to the floor and one of the parts of the cigarette holder expelled what appeared and proved to be cocaine in small plastic bindles. A further search resulted in discovery of dangerous drugs.

Appellant's motion to suppress under section 1538.5 of the Penal Code was denied. The matter proceeded to trial on one count only and after a submission of the matter on the basis of the preliminary hearing transcript a judgment was entered against appellant finding him guilty of a violation of section 11500 (possession of cocaine) of the Health and Safety Code. The district attorney dismissed the remaining counts. Appellant appeals contending the motion was improperly denied.

## ISSUE

Appellant's argument predicated upon *United States* v. *Lopez* (E.D.N.Y. 1971) 328 F.Supp. 1077, is that his Fourth Amendment rights were violated because of the deputy's failure to follow FAA guidelines in respect of airline searches which specified the use of an FAA profile,[1] a device designed to pinpoint those expectant passengers who are most likely to be air-hijackers, was not used. Appellant quotes *Lopez* at page 1083 as follows: "A magnetometer is installed in the passageway leading to the plane so that all passengers must pass through it. It is set to flash a warning light when metal equal to or greater than an average 25 caliber gun in magnetic force deflecting power is carried by. . . .

"A person who triggers the magnetometer and meets the profile requirements is 'interviewed' by airlines personnel. If he provides satisfactory identification, he is permitted to proceed unimpeded. Other-

---

[1] The deputy admitted that when he invited appellant to step over to the table the use of an FAA profile played no part in his mental processes.

wise he is designated a 'selectee' and is denied boarding until a Deputy United States Marshal is summoned."

Our Supreme Court in the recent case of *People* v. *Hyde* (1974) 12 Cal.3d 158 [115 Cal.Rptr. 358, 524 P.2d 830], observed that searches such as the one detailed above have heretofore been justified upon a rationalized expansion of the doctrine of *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868],[2] but abandons that doctrine as a base for such justification and announces: ". . . we do find support under the Fourth Amendment for the pre-departure screening of prospective passengers in the series of United States Supreme Court decisions relating to administrative searches. (*United States* v. *Biswell* (1972) 406 U.S. 311 [32 L.Ed.2d 87, 92 S.Ct. 1593]; *Wyman* v. *James* (1971) 400 U.S. 309 [27 L.Ed.2d 408, 91 S.Ct. 381]; *Colonnade Corp.* v. *United States* (1970) 397 U.S. 72 [25 L.Ed.2d 60, 90 S.Ct. 774]; *See* v. *City of Seattle* (1967) 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737]; *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727]; see also *United States* v. *Davis* (9th Cir. 1973) 482 F.2d 893; *United States* v. *Schafer* (9th Cir. 1972) 461 F.2d 856; *Downing* v. *Kunzig* (6th Cir. 1972) 454 F.2d 1230.) These cases recognize that 'searches conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of crime, may be permissible under the Fourth Amendment though not supported by a showing of probable cause directed to a particular place or person to be searched.' (*United States* v. *Davis* (9th Cir. 1973) *supra*, 482 F.2d 893, 908.)

"In applying the administrative search doctrine to the instant case, we bear in mind that the essential purpose of the anti-hijacking system established by the FAA is not to ferret out contraband or to preserve for trial evidence of criminal activity. . . . Instead, pre-departure screening procedures are a central phase of a comprehensive regulatory program designed to insure that dangerous weapons will not be carried onto an airplane and to deter potential hijackers from attempting to board.[3]

---

[2]"A number of federal cases have justified airport searches on the authority of *Terry*. See, e.g., *United States* v. *Moreno* (5th Cir. 1973) 475 F.2d 44; *United States* v. *Bell* (2d Cir. 1972) 464 F.2d 667; *United States* v. *Epperson* (4th Cir. 1972) 454 F.2d 769; *United States* v. *Lindsey* (3d Cir. 1971) 451 F.2d 701; *United States* v. *Lopez* (E.D.N.Y. 1971) *supra*, 328 F.Supp. 1077." *People* v. *Hyde, supra* at page 162 footnote 3.

[3]The *Hyde* court in footnote 1, page 161, sets out the procedure: "On December 5, 1972, the Federal Aviation Administration (FAA) ordered that as of January 5, 1973, all carry-on items must be searched prior to boarding and all passengers must be screened at least through a magnetometer, a device designed to detect the presence of metal. (Dept. of Transportation Release No. 103-72, Dec. 5, 1972.) The search at issue in the instant

(*United States* v. *Lopez* (E.D.N.Y. 1971) *supra,* 328 F.Supp. 1077, 1082-1083; McGinley & Downs, *Airport Searches and Seizures—A Reasonable Approach* (1972) *supra,* 41 Fordham L.Rev. 293, 304; Sen. Rep. No. 93-14 (1973).)"

The *Hyde* court recognizes that such administrative searches will inevitably result in the exposure of criminal activity unrelated to the search and then says at page 166: "Like all searches subject to the Fourth Amendment, an administrative screening must be measured against the constitutional mandate of reasonableness. In the case of administrative searches, however, 'there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails.' (*Camara* v. *Municipal Court* (1967) *supra,* 387 U.S. 523, 536-537 . . . .)"

In our opinion the search herein outlined was fully justified under the expanded *Terry* doctrine as applied to expectant airline passengers, and there can be no question of its validity under the administrative search doctrine announced by *Hyde.*

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 26, 1975.

---

case occurred before the promulgation of any formal regulations by the FAA requiring specified boarding procedures, but subsequent to the President's directive of September 11, 1970, that the Department of Transportation have airlines adopt appropriate surveillance techniques at whichever airports deemed necessary. (1970 Public Papers of Presidents of the United States: Richard Nixon 742-743 (G.P.O. 1971).)

"Also, in October 1968 a task force comprised of representatives of the FAA, the Department of Justice, and the Department of Commerce was appointed to develop for the airlines, inter alia, a behavioral profile of objective characteristics common to all potential hijackers. (See *United States* v. *Lopez* (E.D.N.Y. 1971) 328 F.Supp. 1077, 1082; McGinley & Downs, *Airport Searches and Seizures—A Reasonable Approach* (1972) 41 Fordham L.Rev. 293, 302.)"