Jack THOMPSON et al., Plaintiffs,

v.

Thomas S. KLEPPE, Secretary of the Interior, et al., Defendants.

Civ. No. 76–0012.

United States District Court, D. Hawaii.

Dec. 15, 1976.

William M. Kahane, Roger W. Fonseca, American Civil Liberties Union of Hawaii Foundation, Honolulu, Hawaii, for plaintiffs.

Lee M. Conover, Asst. Atty. Gen., Trust Territory of the Pacific Islands, Office of the High Commissioner, Saipan, Mariana Islands, for Johnston.

William J. Eggers, III, Asst. U. S. Atty., Honolulu, Hawaii, Alexis Panagakos, Dept. of Justice, L. Neal Ellis, Jr., Dept. of the Army, for other defendants.

MEMORANDUM AND ORDER

WONG, District Judge.

*Facts*

The five plaintiffs, citizens of the United States of America, seek injunctive relief and damages for alleged violations of their Constitutional rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. It is alleged that this action arises under these amendments, the Civil Rights Act, 42 U.S.C. § 1983, and the law of the Trust Territory of the Pacific (TTPI).

The specific allegations are set forth in the amended complaint. Generally, they are as follows:

On May 24, 1975, plaintiffs, employees of Global Associates (Global), attended a party at the residence of another Global employee, in the Sands Bachelor Quarters, civilian housing on Kwajalein. While the party was in progress, defendant Short and Global security officers knocked at the door and produced a "search warrant." A thorough search of the premises was conducted, producing approximately ½ ounce of marijuana. A personal search of all of the room's occupants was also conducted, during which a small quantity of marijuana was found in plaintiff Rahill's pocket.

Plaintiffs were arrested and taken to the jail operated by defendant Global. There, they were informed that they were under arrest for "being present where marijuana was being smoked," and their personal effects were taken from them. Plaintiffs were incarcerated for about two and one-half days. During this time, they were not allowed to make any telephone calls, nor were they provided legal counsel or the opportunity to retain legal counsel. Further, they were interrogated outside the presence of legal counsel without being informed of their right to have an attorney present. During plaintiff Morris' interrogation, he was informed that his wall locker had been searched with the keys he had surrendered after his arrest. Plaintiff Morris was not presented a search warrant for this search, nor was he present during the search. On May 26, plaintiff Frankson's residence and wall locker were also searched using the keys he had surrendered. It is further alleged that plaintiff Rahill was struck without provocation or justification and knocked to the floor.

On May 27, 1975, plaintiffs were purportedly arraigned before a Global employee and bail was set at $500 for each of the plaintiffs, with the exception of plaintiff Frankson, who was held without bail. Following arraignment and the setting of bail, plaintiffs were informed by Global security officers that they had to leave Kwajalein immediately. At that time, they were given three alternatives:

a. Stand trial in Majuro before a Trust Territory District Court and face a fine of $1,000 and a prison term of one year, or

b. Quit their jobs with Global, or

c. Be terminated for cause.

Plaintiffs Thompson, Rahill, and Carvalho quit their jobs, and plaintiffs Morris and Frankson were terminated for cause. All of the plaintiffs, except Frankson, posted bail and were released. On May 28, 1975, plaintiffs were placed on a military flight to Hawaii. However, the plane developed mechanical difficulties and was forced to return to Kwajalein, where plaintiffs were again incarcerated and later released. On May 29, 1975, plaintiffs were placed on another military flight for Hawaii.

This action was filed on January 16, 1976. Defendant Johnston and Federal defendants Kleppe, Hoffman, Russell, and Short now bring motions to dismiss under Rule 12(b)(6) of the Fed.R.Civ.P. For the purposes of the motions submitted, the facts, as set forth in plaintiffs' amended complaint, will be viewed in the light most favorable to plaintiffs. Also, the exhibits attached to the motions will be considered as part of the pleadings in accordance with Rule 10(c) of the Fed.R.Civ.P.

*Jurisdiction*

Plaintiffs assert that their cause of action arises under 42 U.S.C. § 1983 as well as under the provisions of the Constitution. Section 1983 provides that

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any *State or Territory,* subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. (Emphasis added).

However, the Trust Territory is not a State or Territory within § 1983 and, therefore, this action may not be brought under the Civil Rights Act.

Plaintiffs further allege jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1346. A reading of these sections indicates that this Court has jurisdiction under § 1331, but not under §§ 1343 or 1346.

*Treaties, Statutes, and Orders*

Under the Trusteeship Agreement for the Former Japanese Mandated Islands, the United States is designated as the Administering Authority of the Trust Territory. It has the right to exercise all necessary powers of government over the territory and the responsibility for maintaining law and order within the territory. In keeping with the Trusteeship Agreement, Congress has provided that

Until Congress shall further provide for the government of the Trust Territory of the Pacific Islands, all executive, legislative, and judicial authority necessary for the civil administration of the Trust Territory shall continue to be vested in such person or persons and shall be exercised in such manner and through such agency or agencies as the President of the United States may direct or authorize.

48 U.S.C. § 1681(a).

Pursuant to § 1681(a), President Kennedy delegated the authority vested in the President to the Secretary of the Interior. Exec. Order No. 11021, 27 F.R. 4409 (1962). This order also authorized redelegation by the Secretary to officers and employees of the Department of the Interior or "other persons under the jurisdiction of the Secretary of the Interior."

The Secretary of the Interior, in Dept. of the Interior Order No. 2918, amend. No. 1, § 13 (1970), redelegated certain authority to

the High Commissioner. The order states that "Authority to approve or disapprove every bill passed by Congress (the Micronesian Congress) lies in the High Commissioner or the Secretary of the Interior."

Under 48 U.S.C. § 1681a, "Any appointment made on or after May 10, 1967 to the office of the High Commissioner of the Trust Territory of the Pacific Islands shall be made by the President by and with the advice and consent of the Senate."

*Discussion*

A. Motion to Dismiss as to Defendant Johnston

Defendant Johnston, the High Commissioner of the TTPI, is sued in his official capacity only. He moves this Court to dismiss on the grounds that the service of process was defective and that this Court lacks jurisdiction over him.

The motion to dismiss was made with respect to the original complaint, but a request to apply the motion to the amended complaint has not been filed. Nevertheless, defendant's motion will be treated as if it should be applied to the amended complaint.

■ First, it is clear that under 48 U.S.C. § 1681a, the High Commissioner is an officer or employee of the United States. Second, under Rule 4(d)(5) of the Fed.R. Civ.P., personal service of an officer of the United States shall be made by "serving the United States and by delivering a copy of the summons and of the complaint to such officer or agency." Also, 28 U.S.C. § 1391(e) provides that

A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or any agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.

The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.

Furthermore, the District Court of Hawaii has previously held that defendant Johnston is subject to process under 28 U.S.C. § 1391(e). Judge King stated that

In view of my conclusion that the High Commissioner is an official of the Department of the Interior, . . . he would be subject to extra-territorial service to the same extent as any other official in the Department.

*People of Saipan v. United States Department of Interior*, D.C., 356 F.Supp. 645, 651 n. 13 (1973), *aff'd as modified*, 502 F.2d 90 (9th Cir. 1974), *cert. denied*, 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975). Therefore, service of process by certified mail was proper.

■ As to defendant's second ground, lack of jurisdiction, the District Court has original jurisdiction under 28 U.S.C. § 1331 of federal questions. Nevertheless, defendant argues that the action may not be brought against him in a United States court. He cites *People of Saipan*, 502 F.2d at 99, for this position. In that case, the Ninth Circuit held

Thus, although we hold that the Trusteeship Agreement is a source of individual legal rights, we also hold that, in a case involving actions by the High Commissioner within the scope of his duties as chief executive, these rights are not initially enforceable in United States courts. Rather, upon principles of comity, they should be asserted before the High Court of the Trust Territory.

However, *People of Saipan* does not address the question of jurisdiction of United States courts over actions by the High Commissioner involving the Constitutional rights of United States citizens on the United States

military installation of Kwajalein. This situation seems distinguishable from that in *People of Saipan*, and one within the jurisdiction of the United States District Court.

### B. Federal Defendants Sued in Their Official Capacities

The major issue presented in this case is whether or not the Constitution of the United States of America applies to United States citizens on Kwajalein, Trust Territory of the Pacific Islands.

The plaintiffs argue that under the cases known as the "Insular Cases," all "fundamental" rights and all other Constitutional rights enforceable against the states apply to the American territories, unless local customs clearly preclude application. *See Balzac v. Puerto Rico*, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627 (1922); *Dorr v. United States*, 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128 (1904); *Hawaii v. Mankichi*, 190 U.S. 197, 23 S.Ct. 787, 47 L.Ed. 1016 (1903); *Downes v. Bidwell*, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901). In response, defendants argue that the TTPI is not a territory; it is a "strategic trusteeship." Technically, defendants are correct. However, this does not answer the issue presented. Furthermore, *People of Saipan*, which defendants cite in support of their position, does not really decide the status of the TTPI. In *People of Saipan*, Judge King reaffirmed the court's decision in *Enewetak* that NEPA applies to federal agencies operating in the TTPI. The court stated that "both the language and legislative history of NEPA evidenced a congressional intent to apply the statute to all areas under United States control . . . ." 356 F.Supp. at 650. In addition, the court said,

. . . it is my opinion that the United States exercises a maximum degree of control which is inconsistent with the assertion that the Trust Territory is a foreign country. My decision is reinforced by the fact that there does not appear to have been any significant delegation of authority to the citizens of the Trust Territory. The United States acting through the Secretary of the Interior, controls the High Commissioner and retains an abso-

lute veto over all legislation enacted by the Congress of Micronesia. Accordingly, without determining exactly what status the Trust Territory occupies, I hold that it is not a foreign country entitled to immunity from suits in United States courts.

356 F.Supp. at 655–656.

However, the Administrative Procedure Act, 5 U.S.C. § 701(b)(1)(C), provides that "the governments of the territories or possessions of the United States" are excluded from judicial review. In view of this provision, the court held that the same standards on scope of review should be applied to NEPA. These conclusions were affirmed by the Ninth Circuit, 502 F.2d 90 (1974).

■ Therefore, although it has been held that the TTPI is not a territory, it is to be considered under United States control or possession such that it cannot be considered a foreign country.

■ The specific geographical area involved in this case is the Kwajalein Missile Range (KMR), a National Missile Test Range within the Ballistic Missiles Defense Systems Command (BMDSCOM), Department of the Army, Huntsville, Alabama.

Title 4 of the Trust Territory Code, Section 151(1) defines the Kwajalein Missile Range to include

. . . those islands, parts of islands, and the territorial waters adjacent thereto, in the Kwajalein Atoll, Marshall Island District that are now or may hereafter be used by the United States military establishment pursuant to agreement with the Government of the Trust Territory.

The Department of the Army, through the KMR, provides certain support services for Kwajalein Atoll, as authorized by 48 U.S.C. § 1681(b). This section provides that

The head of any department, corporation, or other agency of the executive branch of the Government may, upon the request of the Secretary of the Interior, extend to the Trust Territory of the Pacific Islands, with or without reimbursement, scientific, technical, and other assistance under

any program administered by such agency, or extend to the Trust Territory any Federal program administered by such agency, if the assistance or program will promote the welfare of the Trust Territory, notwithstanding any provision of law under which the Trust Territory may otherwise be ineligible for the assistance or program . . . .

The scope and nature of these services were expanded, at the request of the Secretary of the Interior, in an agreement entered into between the BMDSCOM and the Trust Territory. The expanded services included appointment of personnel as law enforcement officials. This agreement became effective December 18, 1974, and it is in accordance with Article 6 of the Trusteeship Agreement.

The services requested by the Secretary of the Interior were provided by Global Associates. Global acted pursuant to a contract, number DASG60–75–C–001, it had with BMDSCOM to provide security and law enforcement services for the KMR. Under the contract, Global was "responsible for enforcing Army regulations, KMR Regulations, KMR Ordinances, and Trust Territory Laws, as directed by CO, KMR." The contract further provided that "The Contractor shall also enforce all additional safety and police requirements imposed by the CO, KMR." See Exhibit C to Federal Defendants' Motion to Dismiss.

The commanding officer of KMR was Col. Robert L. Russell. As indicated in his affidavit, Exhibit D to Federal Defendants' Motion to Dismiss, Col. Russell was informed of the "pot party" and the action proposed by the security department. Furthermore, he went to the police station at the time of plaintiffs' arrests and was advised of all additional developments. After plaintiffs were taken into custody, he called the Range Director, Huntsville, Alabama, the Deputy Range Director, and the Executive Officer, Kwajalein Missile Range Directorate, to notify them of the "night's developments."

The existence of the KMR, the agreements, and the commanding officer's actions are consistent with the theory that Kwajalein is a military base, post, or installation.

In view of the status of the TTPI and Kwajalein, it would be anomalous to find that the plaintiffs, citizens of the United States, are not entitled to the protections afforded them under the Constitution of the United States. The Supreme Court has stated, in Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957), that

When the Government reaches out to punish a citizen who is abroad, the shield which the Bill of Rights and other parts of the Constitution provide to protect his life and liberty should not be stripped away just because he happens to be in another land.

354 U.S. at 6, 77 S.Ct. at 1225.

Reid involved the "question of court-martial jurisdiction over civilian dependents of armed services personnel to prosecute them for alleged murder of members of the armed services." (Case headnote). In that case, the Court held that the Constitution applied, in its entirety, to the trials of civilian dependents abroad. The executive agreements between the United States and Great Britain and Japan giving United States Military Courts exclusive jurisdiction over offenses committed in those countries by American servicemen and their dependents could not affect the rights granted under the Bill of Rights. As the Court said, ". . . no agreement with a foreign nation can confer power on the Congress, or any other branch of Government, which is free from the restraints of the Constitution." 354 U.S. at 16, 77 S.Ct. at 1230.

Defendants argue that this language does not bar the United States from agreeing with the United Nations to govern the Trust Territory without extending constitutional rights to United States citizens. They cite the jurisdiction of military courts over "civilians accompanying the military in the field during wartime" and the jurisdiction of "American military-occupation courts over United States nationals" (Federal Defendants' Reply to Plaintiffs' Memorandum in Opposition to Federal Defend-

ants' Motion to Dismiss, pp. 5–6) as examples of court-sanctioned government action which did not conform to the Bill of Rights. All of the cases cited were decided prior to *Reid*, and they involved the exigencies of wartime. Furthermore, defendants' argument does not address the point that under *Reid* the United States could not agree with the United Nations to govern the TTPI without observing the Constitution in its dealings with United States citizens.

Defendants further argue that the present situation is distinguishable from that in *Reid* on the basis that the "federal government has not acted to abridge the rights of any U. S. citizen in the TTPI" (Reply Memorandum at p. 6). However, it is clear from the Trust Agreement, Dept. of Interior Order No. 2918, amend. No. 1, § 13, the agreement between BMDSCOM and the Trust Territory, the contract between BMDSCOM and Global Associates, and the affidavits submitted by defendants that the action taken was that of the United States Government, through its officers, employees, contractors, or representatives on a United States military installation.

Defendants also argue that even if plaintiffs prove a violation of their constitutional rights, an award of monetary damages against the federal defendants is barred by the doctrine of official immunity. They rely on *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). However, *Barr* deals with an action within the scope of duty. The facts in this case are more like those in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In that case, the Supreme Court held that a violation of the Fourth Amendment "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." The Court said

. . . as our cases make clear, the Fourth Amendment operates as a limitation upon the exercise of federal power regardless of whether the State in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged in by a private citizen.

403 U.S. at 392, 91 S.Ct. at 2002.

The Supreme Court had previously held in *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), that police officers are not entitled to absolute and unqualified immunity from liability for damages under § 1983. Rather, they should not be held liable if they acted in good faith and with probable cause in making an arrest under a statute they believed to be valid. In this case, no United States or Trust Territory laws authorized the actions allegedly taken by the defendants.

Therefore, under *Bivens* and the reasoning in *Pierson*, the defendants are not protected from liability for damages by the doctrine of official immunity.

*Conclusion*

Having carefully considered the arguments and authorities submitted by the respective parties in their memoranda, this Court orders that for the reasons cited above, defendants' motions to dismiss the action for an injunction under § 1983 are hereby granted, and defendants' motions to dismiss the action for damages are hereby denied.