**Lawrence R. BARUSCH, individually and on behalf of all others similarly situated, Plaintiffs/Appellants,**

v.

**Paul M. CALVO, Governor of Guam; Jose D. Diego, Director of Commerce, Government of Guam; Francisco Torres, Chief of Customs, Government of Guam, et al., Defendants/Appellees.**

No. 80–4397.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1982.

Decided Sept. 3, 1982.

Rehearing Denied Dec. 21, 1982.

Nicholas C. Arguimbau, San Francisco, Cal., for plaintiffs/appellants.

Thomas E. Himrod, Agana, Guam (argued), for defendants/appellees; David D. Cheal, Agana, Guam, on brief.

Before MERRILL, TRASK, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Appellant Lawrence Barusch ("Barusch") is a United States citizen and resident of the Territory of Guam. He frequently travels to Hawaii, Hong Kong, the Commonwealth of the Northern Mariana Islands, and other locations both within and outside the United States. Guam governmental officials inspect his luggage each time he returns to Guam, even when he has not been outside the United States.

Barusch claims that the inspections are unconstitutional warrantless searches. He sought an injunction prohibiting Guamanian officials from conducting the searches. He also sought declaratory relief and damages. The Government of Guam sought dismissal of the action for failure to state a claim, asserting that the searches are valid customs and agricultural inspections. The district court *sua sponte* converted the Government's motion to a motion for summary judgment and entered judgment for the Government. Barusch appealed.

*Agricultural Inspections*

■ The Fourth Amendment's protections against unreasonable searches extend to the Territory of Guam. The Government of Guam adopted a Bill of Rights which embraces the language of the Fourth Amendment, 48 U.S.C. § 1421b(c), and provides that Guam's Bill of Rights is to have the same force and effect as the Bill of Rights of the United States Constitution. 48 U.S.C. § 1421b(u). Moreover, the Supreme Court has explicitly held that the Fourth Amendment applies to Puerto Rico. *Torres v. Puerto Rico*, 442 U.S. 465, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979). The reasoning of that decision applies with equal force to Guam. *Cf. United States v. Freeman*, 426 F.2d 1351 (9th Cir. 1970).

The Plant Quarantine Act, 7 U.S.C. § 161 *et seq.*, authorizes the Secretary of Agriculture to quarantine any area of the United States or its territories to prevent the spread of any dangerous plant disease or insect infestation. It is the Secretary's duty to promulgate regulations permitting and governing the inspection of plant products traveling from quarantined areas. *Id.*

In *United States v. Schafer*, 461 F.2d 856 (9th Cir.) *cert. denied*, 409 U.S. 881, 93 S.Ct. 211, 34 L.Ed.2d 136 (1972), this court considered a Fourth Amendment challenge to warrantless agricultural inspections of baggage and persons leaving quarantined areas.[1] We concluded that such searches do not violate the warrant requirements of the Fourth Amendment. We stressed the importance of agricultural quarantines to prevent the spread of dangerous plant diseases and insects. We noted that the time element involved was a "major consideration ... [because] ... unless all departing passengers could be detained while warrants could be obtained, the goods would be moved before the warrants could issue." *Id.* at 858. For those reasons we concluded that a warrant requirement would "effectively cripple any meaningful quarantine." *Id.*

When considering challenges to agricultural and other administrative searches, courts need to determine whether the asserted administrative need to search is simply a pretense employed to justify a warrantless search for criminal law enforcement purposes. In *Schafer*, we emphasized the absence of evidence to suggest the challenged inspections were being used as an instrument of criminal law enforcement to circumvent legal restrictions on criminal search warrants. *Id.* at 859. The defendant herself "disclaim[ed] any suggestion that the quarantine inspection was used as a pretext to search for criminal law violations generally." *Id.*

1. Pursuant to the Plant Quarantine Act, the Secretary of Agriculture quarantined Hawaii, thereby banning the transport of any plant products "by any person from Hawaii into or through the continental United States, Guam, Puerto Rico, or the Virgin Islands of the United States...." 7 C.F.R. § 318.13. The luggage of passengers leaving Hawaii is therefore subject to inspection by an agriculture inspector to determine whether any prohibited plant products are being taken from the quarantined area. Schafer was arrested after marijuana and LSD were found in her purse during such a search.

In contrast to *Schafer*, the Supreme Court recently invalidated a Commonwealth of Puerto Rico statute authorizing police to search the luggage of any person arriving in Puerto Rico from the United States. *Torres v. Puerto Rico*, 442 U.S. 465, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979). That statute, unlike the regulation challenged in *Schafer*, was not enacted under authority of the Plant Quarantine Act. However, the Commonwealth argued that the statute should be upheld, among other reasons, as a valid health and safety measure. The Supreme Court rejected that argument, pointing to legislative history indicating that the Puerto Rican statute was enacted to curb the importation from the mainland of firearms, explosives, and narcotics. The statute was struck down because "[t]he governmental interests to be served in the detection or prevention of crime are subject to traditional standards of probable cause to believe that incriminating evidence will be found. Yet [the challenged statute] does not require ... probable cause for such belief." 442 U.S. at 471, 99 S.Ct. at 2429.

The instant case is similar both to *Schafer* and *Torres*. As in *Schafer*, the challenged searches take place under the auspices of the Plant Quarantine Act.[2] Guam, however, unlike Hawaii, is not actually under quarantine. Moreover, whereas *Schafer* involved searches of passengers leaving Hawaii, the instant case involves searches of passengers arriving in Guam. The Government of Guam claims the searches are necessary to prevent the importation of plant articles from Hawaii. Appellant Barusch argues that passengers traveling from Hawaii to Guam have already been searched upon their departure from Hawaii and that a second search is at least unnecessary, and possibly a constitutionally unjustified intrusion.

Barusch also argues that Guam has no agriculture to protect and that the instant case is closer to *Torres* than to *Schafer* because the inspections at issue are intended primarily for law enforcement purposes. The record suggests that law enforcement may indeed be one of the objectives of the searches. In denying Barusch's motion for a preliminary injunction, the district court took judicial notice that the commerce and use of drugs had been increasing, and that the number of violent crimes had risen as a result.

> Summary judgment is appropriate only: when there is no genuine issue of any material fact or when viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law.

*Gaines v. Haughton*, 645 F.2d 761, 769 (9th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982). Here, viewing the evidence in the light most favorable to Barusch, there are definitely genuine issues of material fact left to be resolved. We therefore reverse and remand.

On remand, the district court should conduct an inquiry to determine whether the searches are needed to protect agriculture in Guam and, if so, whether the searches are more intrusive than is necessary to achieve that goal. The court should look closely to determine whether the right to conduct agricultural searches is being abused in order to circumvent the Fourth Amendment warrant requirements imposed when a search is intended for criminal law enforcement purposes.

*The Customs Searches*

■ The Secretary of the Treasury has delegated to the Government of Guam the authority to administer United States customs in Guam.[3]

---

2. The Plant Quarantine Act is applicable to Guam. 7 C.F.R. § 319.37–27 (1981). A Memorandum of Understanding between Guam's Departments of Agriculture and Commerce and the United States Department of Agriculture delegates to Guamanian officials authority to conduct any necessary agricultural inspections on behalf of the United States Department of Agriculture.

3. The Territory of Guam is itself outside the customs territory of the United States. See 19 U.S.C. § 1202, headnote 2; 19 C.F.R. § 1.2(b)

Barusch argues that the statute is unconstitutional insofar as it permits customs searches of persons arriving in Guam from the Commonwealth of the Northern Mariana Islands. He argues that the Northern Marianas cannot be considered a foreign country, *Thompson v. Kleppe*, 424 F.Supp. 1263, 1267 (D.C.Haw.1976), and specifically that the Constitution of the Northern Mariana Islands adopts the Bill of Rights and the Fourteenth Amendment of the United States Constitution, including the Fourth Amendment guarantee against unreasonable searches and seizures. He also cites *Torres v. Puerto Rico*, 442 U.S. 465, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979), a decision which held that the Commonwealth of Puerto Rico cannot consider itself an "intermediate border" of the United States in order to conduct "customs" searches of all persons arriving in the Commonwealth. He argues that the reasoning of *Torres* should control this case and prevent the Government of Guam from acting as an intermediate border with respect to the Northern Marianas.

The Commonwealth of the Northern Marianas, however, has a unique political status which makes this case different from any that might arise in a territory of the United States. The United States has been in possession of the Northern Marianas since World War II and, for twenty years, administered the islands—denominated the Trust Territory of the Pacific Islands—under a trusteeship agreement approved by the United Nations Security Council. Then, in 1975, a "Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America," 90 Stat. 263 (1976), *cited after* 48 U.S.C. § 1681, was executed. When all portions of the Covenant become effective, the Northern Marianas will have a political status comparable to other United States territories. For the time being, however, the section of the Covenant that confers United States citizenship upon citizens of the Northern Marianas is not yet effective, and no date has been set for that to occur.

Legitimate border searches by customs agents have long been held *per se* reasonable and thus exempt from the warrant provisions of the Fourth Amendment. *United States v. Ramsey*, 431 U.S. 606, 616–19, 97 S.Ct. 1972, 1978–80, 52 L.Ed.2d 617 (1976) and cases cited therein. Such searches are justified "by the single fact that the person or item in question had entered into our country from outside." *Id.* at 619, 97 S.Ct. at 1980. Since the Northern Marianas have not yet fully gained the political status of a United States territory, it is proper that a customs search be conducted of persons traveling from the Northern Marianas to Guam.

In light of the foregoing, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

and (c) (1981). 19 C.F.R. § 718 n.5 provides: "Importations into [Guam and other American territories outside the customs territory of the United States] are not governed by the Tariff Act of 1930 of these Customs Regulations ... The customs administration of Guam is under the Government of Guam."