MR. JUSTICE SHEEHY,
dissenting:
*444 I dissent.
The general rule is that a warrantless search, administrative or otherwise, is illegal. Camara v. Municipal Court (1967), 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930. An exception to the general rule was carved in United States v. Schafer (9th Cir.1972), 461 F.2d 856. It is necessary to examine the facts of the Schafer case to determine why the circuit court made an exception to the general rule.
Terry Lee Schafer was a departing passenger on an airline out of Hawaii. Her handbag was searched when she presented herself at the airport for departure. In her handbag was found a quantity of LSD pills. The search was made by federal authorities pursuant to federal statutes which prevent the transportation from Hawaii of certain quarantined agricultural substances which might spread disease or other injurious effects in the continental United States. The Secretary of Agriculture had adopted a regulation which expressly provided that “[a]ll baggage and other personal effects of passengers” were to be searched at airports pursuant to the federal law. 7 C.F.R. § 318.13-12(a). In Schafer, therefore, the Ninth Circuit Court of Appeals was impressed by the fact that there was an express provision of federal administration regulation that required the search of all baggage or other personal effects of all departing passengers. The Secretary’s power to make such a regulation was founded on 7 U.S.C. § 150(ee) and 162. The Ninth Circuit Court of Appeals upheld this warrantless search because it applied to all persons, was founded on an express regulation, and the exigency of a departing passenger made the time necessary to procure a search warrant impractical and would render nugatory the desired goal of preventing quarantined articles from reaching the continental United States.
Contrast the situation in Schafer with that which occurred here. We have a package resting in the United Parcel Service receiving room in a town in Hawaii. The agent in this case does not search all packages. The field officer is given *445 discretion as to which of the packages he will search. In this case he conducted admittedly a “random” search. The field official testified that no searches were ever conducted on packages received at UPS in the afternoon. In fact, he came to the UPS office during the lunch hour, when the conveyor belt in the UPS office was stopped, and inspected some twelve packages of the unspecified number on the belt. He based his inspections solely on the weight of the packages, after eliminating any packages going between business or mail order addresses. Why he made that distinction he did not specify in his testimony. No reason was shown in his testimony why he had to seize the package here without a search warrant. His inspection of the package in question revealed no plants bearing diseases or other substances which might injuriously affect crops in the continental United States.
The evidence reveals no exigency existing which would prevent him from procuring a search warrant. The same line of reasoning applies to officer Hisatake, to whom Baba, the federal official, turned over the opened package. Certainly no exigency existed as to Hisatake, who should have procured a search warrant before seizing the property reported to him by Baba.
What the majority has done in this case is to bootstrap the narrow Schafer exception to Camara into a now general rule that any intrusion by a federal official or a state official into packages in commerce without a warrant is permissible, provided that some federal statute allows the federal agent a right of inspection. The majority has carried Schafer too far.
The search by Baba was illegal, because no probable cause existed for him to suspect that the package in question contained quarantined substances; it was illegal as to Hisatake, because there was no exigency existing which would prevent him from procuring a search warrant to seize the property discovered by Baba.
A strong factor on which the Ninth Circuit Court upheld *446 the search in Schafer was that the decision to inspect was not subject to the discretion of the official in the field, relying on Camara, 387 U.S. at 532, 87 S.Ct. at 1733, 18 L.Ed.2d at 937.
Since the seizure was illegal in its inception, all other evidence uncovered by the prosecution after the illegal seizure should have been suppressed by the District Court.
Then there is the question of entrapment in this case. Our statute defining the crime of possession of dangerous drugs with intent to sell has an inherent peculiarity. Section 45-9-103, MCA. The permissible sentences under the crime are heavier than for mere possession of dangerous drugs. Section 45-9-102, MCA. The code compiler lists these elements as necessary to a conviction for criminal possession of dangerous drugs with intent to sell: (1) knowing (2) control of a (3) dangerous drug for a sufficient time to be able to terminate control, as well as (4) intent to sell the drug. Since the package here was seized in the Kelly home unopened, in the same condition as delivered, there is no evidence in this case upon which Kelly’s conviction can be founded, since none of the elements of the crime could be proved beyond a reasonable doubt.
It is idle to recite as the majority recites, that it is for the fact-finder to determine entrapment in this case. There were no facts for the fact-finder to find. Kelly had done nothing but receive from the officers here a package they had delivered to him containing drugs. It is on the receipt alone that the conviction here is founded. His knowing control of a dangerous substance, and his intent to sell the same are completely absent from the evidence.
My conclusion is that the power of federal agricultural agents to inspect packages in Hawaii for quarantined plants and insects is being used by law enforcement as an instrument to get into homes otherwise out of their purview. We have developed some strange philosophies about drugs and privacy. The law permits a man to watch lewd movies in his home to his heart’s content. I find that detestable. The law *447 does not permit a man to use drugs in the privacy of his own home. I find drug use also detestable, but I am unable to distinguish the legal concepts that differentiate the privacy rights of the drug user from the lewd-movie watcher. But even where the law is being violated, there are privacy rights in a home which the courts ought to protect as sacred. The federal officer here, Baba, found no violation of the law he was empowered to enforce. Hisatake, the Hawaiian Five-O, without a warrant, took the package out of the stream of commerce to readdress the package. Hisatake reinserted the package into commerce in a scheme designed to get the Bozeman officers into the Kelly home. Every step of those actions was unlawful. I won’t condone it.
The officers in this case testified they had no claim that Kelly mailed or had caused to be mailed the package to himself. His conviction rests simply on the package delivered to him by the officers, addressed to him by them, and originally sent into commerce by an unknown and unidentified person. Kelly’s possession is at most constructive only.
Do you have an enemy you would like to frame? Buy yourself an airline ticket to Hawaii and while there round up some marijuana, place it in a heavy package addressed to your enemy but not otherwise conspicuous and deliver it to UPS, but be sure to deliver it in the morning. Chances are it will be randomly opened by someone named Baba who in turn will turn it over to the authorities to make certain that it is delivered to your enemy. Our law enforcement officers will see to it that he is tailed, nailed and jailed. His mere possession of the package will be enough, with the blessing of this Court.
In speaking of entrapment, I refer only to the drugs contained in the package. The other drugs and paraphernalia seized in the home may have independently sustained a conviction in a proper case, but here they are tainted by the illegal entry of the officers into the Kelly home.