Strafford
No. 88-196

THE STATE OF NEW HAMPSHIRE

v.

MONIQUE E. TURMELLE

August 16, 1989

*John P. Arnold*, attorney general (*Clyde R. W. Garrigan*, assistant attorney general, on the brief and orally), for the State.

*Stephen A. White*, of Dover, by brief and orally, for the defendant.

BROCK, C.J. The defendant appeals from her conviction following a bench trial in the Superior Court (*McHugh*, J.) for possession of a controlled drug with intent to sell. RSA 318-B:2, I (Supp. 1988). She contends that the court erred: (1) in denying her pretrial motion to suppress evidence that she alleges was the product of a search in violation of the State and Federal Constitutions; (2) in returning a guilty verdict based solely on circumstantial evidence; and (3) in denying her motion for reconsideration. We affirm.

On April 27, 1987, Val Sakamoto, a United States Department of Agriculture plant quarantine officer stationed at Honolulu International Airport, was inspecting parcels about to be shipped from Hawaii to the continental United States to determine whether they contained any agricultural articles or pests whose transport was prohibited under the federal Plant Quarantine Act. *See* 7 U.S.C. § 161 (1982), 7 C.F.R. §§ 318.13, .13-12(b) (1988). Sakamoto observed a bin containing business packages bearing agricultural permits about to be loaded onto an air-freight courier's airplane. He noticed that the bin also contained four personal packages which did not bear agricultural permit stamps indicating prior inspection. The parcels drew Sakamoto's attention because the Department of Agriculture targets personal effects as having a high risk of containing agricultural contraband.

The parcels were addressed to the defendant, Monique Turmelle, at 41 Belknap St., apartment 2, Dover, New Hampshire, and bore the return address of Stephen Heuer, in a fruit-growing region of Hawaii. The quarantine officer removed the four parcels from the bin, determined that they had the "right weight and feel" for agricultural contraband, and opened them. He discovered personal effects, clothes, household goods, and heat-sealed packages filled with what appeared to him to be marijuana. Sakamoto informed his supervisor of his discovery, and the supervisor contacted the local United States Drug Enforcement Administration (DEA) office. The DEA forwarded the packages to the Dover Police Department, where they arrived on April 30.

The Dover police examined the packages and determined that they contained marijuana. The police then re-sealed the packages, obtained a search warrant for 41 Belknap Street, apartment 2, and had the packages delivered there by an officer posing as an

employee of the air-freight courier. The defendant was not present, but a co-defendant, one of three people in the apartment, signed for the delivery. Fifteen minutes later, the police entered the apartment pursuant to the warrant. Just as they were beginning their search, the defendant arrived.

The police found the unopened Hawaiian packages in one of the bedrooms. In the same bedroom, the police found three locked suitcases. From the first suitcase, officers retrieved three brown paper bags, each containing plastic packets of marijuana. The marijuana weighed a total of approximately five pounds. One brown paper bag was marked on the outside with the handwritten message: "To Wendy, with love, Monique;" the second read, "Marybeth, May all your dreams come true, Love, Monique;" and the third read, "All my love to you, Sandy. Your pal, Monique."

Inside the second suitcase, the police found the following: a voter registration application signed by the defendant listing her social security number and date of birth; a voter registration card in the defendant's name indicating as a residence the Hawaiian address of Stephen Heuer; several documents bearing Heuer's name; two envelopes, one marked "S + M $1,500" and the other "S + M $1000," each holding those amounts of cash; and a third envelope containing $7,000.

The third suitcase contained $1000 and an envelope addressed to "Steven and Monique" at the Hawaiian address. Elsewhere in the apartment, the police found three notes apparently signed by the defendant, two of which seemed to refer to drug transactions. The third note read:

> "Delivery person. I, Monique Turmelle, am expecting boxes from Hawaii. The front door buzzer does not work. Please come up to the 2nd floor apartment door to knock. If no one is home, please leave me with info. on where I may pick it up tomorrow. Thank you, /s/ Monique Turmelle."

The police arrested the defendant, informed her of her *Miranda* rights, and transported her to the Dover police station. A police officer testified that during the booking procedure, the defendant stated to him that "she had screwed up ... she had watched *Midnight Express* [a film dealing with drug smuggling] ... and couldn't believe this could happen to her in Dover." The defendant also signed a property receipt at the station. The trial court later found that her signature on the receipt matched the signatures on the notes and the three brown paper bags.

On May 21, 1987, the defendant was indicted on one count of possession of a controlled substance with intent to sell. *See* RSA 318-B:2, I (Supp. 1988). She filed a motion to suppress evidence derived from the search by plant quarantine officer Sakamoto, which she alleged violated the State and Federal Constitutions. The Superior Court (*Nadeau*, J.) denied the motion, finding that Sakamoto's action was a "reasonable administrative search." Following a bench trial in March, 1988, the court returned a guilty verdict, finding that the defendant knew the nature of the drug contained in the suitcases, knew that the drug was in her vicinity, and had constructive possession of the drug with the intent to sell or give it to another person. The court denied the defendant's motion for reconsideration, in which the defendant argued that the State had failed to prove that she constructively possessed the suitcases, and sentenced her to three to six years in the New Hampshire State Prison with all but twelve months suspended.

The defendant appeals that decision, contending first that the court erred in denying her motion to suppress evidence derived from the warrantless search conducted by the federal plant quarantine officer in Hawaii because that search violated part I, article 19 of the State Constitution and the fourth amendment of the United States Constitution. We first examine her claim under the New Hampshire Constitution, and will only address federal constitutional issues to the extent that the United States Constitution provides greater protection than our State Constitution. *State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

Under part I, article 19 of our State Constitution, a warrantless search is *per se* unreasonable and evidence derived from such a search is inadmissible unless the State proves that the search comes within one of the recognized exceptions to the warrant requirement. *State v. Beede*, 119 N.H. 620, 625, 406 A.2d 125, 129 (1979), *cert. denied*, 445 U.S. 967, *reh'g denied*, 446 U.S. 993 (1980); *State v. Theodosopoulos*, 119 N.H. 573, 578, 409 A.2d 1134, 1137 (1979), *cert. denied*, 446 U.S. 983 (1980). Although we have indicated in the past that an exception may lie in the context of administrative searches, we have never explicitly recognized such an exception. *See State v. Marconi*, 113 N.H. 426, 428, 309 A.2d 505, 507 (1973); *Manchester Press Club v. Commission*, 89 N.H. 442, 444, 200 A. 407, 408 (1938); *Dederick v. Smith*, 88 N.H. 63, 66, 184 A. 595, 597–98 (1936). Today, we explicitly adopt, under our own constitution, the administrative search exception to the warrant requirement. N.H. CONST. pt. I, art. 19.

For a search to fall into this exception, it must not be unreasonable. The United States Supreme Court has ruled that a warrantless administrative search is reasonable under the fourth amendment if it satisfies three criteria. *New York v. Burger*, 107 S. Ct. 2636, 2643–44 (1987). "First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." *Id.* at 2644. "Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme'." *Id.* (quoting *Donovan v. Dewey*, 452 U.S. 594, 600 (1981)); *see Marconi, supra* at 429, 309 A.2d at 507 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 533 (1967)). Finally, the implementation of the statutory inspection program must provide "a constitutionally adequate substitute for a warrant." *Burger supra* (quoting *Donovan*, 452 U.S. at 600); *see* 79 C.J.S. *Searches and Seizures* § 66, at 174 (Supp. 1989). Adoption of these criteria guarantees New Hampshire individuals protection against unreasonable administrative searches. N.H. CONST. pt. I, art. 19. *See* RSA 595-B:2 (Supp. 1988) (standard for issuing administrative inspection warrant); RSA 595-B:7 (consequences of warrantless administrative inspection).

Plant quarantine officer Sakamoto was inspecting shipments to the continental United States "to prevent the spread of dangerous plant diseases and insect infestations," 7 C.F.R. § 318.13(a), pursuant to the Hawaiian quarantine imposed under the Plant Quarantine Act. 7 U.S.C. § 161. The quarantine regulations authorized inspectors to open any container carried as cargo on any carrier moving from Hawaii to the continental United States, to search for the presence of any article or plant pest whose movement was prohibited by the quarantine. 7 C.F.R. § 318.13-12(b). Guided by the Department of Agriculture regulations, Sakamoto reasonably believed that it would be appropriate for him to open a personal package lacking a permit stamp sent from a fruit-growing region of Hawaii that had the "right weight and feel" for agricultural contraband.

Sakamoto's search satisfied the three necessary criteria. First, the federal government had a substantial interest in preventing "the spread of a dangerous plant disease or insect infestation" into the continental United States, 7 U.S.C. § 161, and authorized the imposition of a quarantine to combat that threat. Second, warrantless inspections were necessary to further the regulatory scheme. 7 C.F.R. § 318.13-12(b). *See Marconi supra.* "[R]equiring warrants for agricultural inspections of this type would effectively cripple any meaningful quarantine," because it would be unfeasible

for an inspector to obtain a warrant every time he had a reasonable belief that it would be appropriate to inspect a package. *United States v. Schafer,* 461 F.2d 856, 858 (9th Cir.), *cert. denied,* 409 U.S. 881 (1972). Finally, the quarantine program insures that inspectors may only inspect a package when they have a reasonable belief that it would be appropriate to look for contraband there of a type within the purview of the regulatory scheme in question. *See Davy v. Dover,* 111 N.H. 1, 3, 273 A.2d 849, 850 (1971); *Camara,* 387 U.S. at 538-39. Sakamoto's recitation of the factors leading him to inspect the four parcels demonstrated that articulable guidelines limited inspectors' discretion and provided a constitutionally adequate substitute for a warrant.

In addition, there has been no suggestion that Sakamoto was using his authority to search for agricultural contraband as a subterfuge for uncovering evidence of criminal activity. *See State v. Severance,* 108 N.H. 404, 408, 237 A.2d 683, 686 (1968). Sakamoto's search therefore came within a valid exception to our warrant requirement, N.H. CONST. pt. I, art. 19, and the trial court correctly denied the defendant's motion to suppress. *See State v. Kelly,* 668 P.2d 1032, 1037 (Mont. 1983). Because the Federal Constitution affords the defendant no greater protection than our own, *see Schafer supra,* we need make no independent federal analysis. *See State v. Ball,* 124 N.H. at 232, 471 A.2d at 351.

The defendant also contends that the court erred in failing to suppress evidence derived from Sakamoto's search because the statute authorizing the search, 7 U.S.C. § 161, violates the United States Constitution. We reject this argument because, first, the statutory scheme satisfies the criteria announced in *Burger. Burger,* 107 S. Ct. at 2643-44. Second, the federal courts have upheld the statute. *See Schafer supra; Barusch v. Calvo,* 685 F.2d 1199, 1200 (9th Cir. 1982). Furthermore, even if we declared the statute unconstitutional, evidence derived from a search made by an officer relying on a statute in good faith need not be suppressed. *See Illinois v. Krull,* 107 S. Ct. 1160, 1167 (1987).

The defendant next contends that the circumstantial evidence the State put forward to establish that she constructively possessed the marijuana did not exclude all other rational conclusions, and that the evidence was therefore insufficient to support her conviction. She contends that the evidence could have just as likely supported the conclusion that the suitcases, and thus the marijuana, belonged to Stephen Heuer.

To gain a conviction for possession of a controlled substance, the State must prove beyond a reasonable doubt that a defendant: "(1) had knowledge of the nature of the drug; (2) had knowledge of its presence in his vicinity; and (3) had custody of the drug and exercised dominion and control over it." *State v. Francoeur*, 122 N.H. 386, 387, 445 A.2d 1095, 1096 (1982). "If the drug was not in the defendant's physical possession when the police found it, the State must prove constructive possession." *State v. Stiles*, 128 N.H. 81, 85, 512 A.2d 1084, 1088 (1986). Constructive possession can be inferred from incriminating statements or circumstances linking the defendant to the drugs, such as personal possessions found near the drugs. *State v. Fossett*, 119 N.H. 155, 158, 399 A.2d 966, 968 (1979). Further, constructive possession of drugs need not be exclusive. *State v. Comeau*, 114 N.H. 431, 436, 321 A.2d 590, 593 (1974).

We will uphold the trial court's verdict unless no rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Ouellette*, 125 N.H. 602, 602–03, 484 A.2d 1148, 1149 (1984). Circumstantial evidence may support a guilty verdict if it precludes all other rational conclusions. *Id.* at 603, 484 A.2d at 1149.

The record before us amply supports the trial court's verdict. Considered with all the other evidence introduced, the handwritten statements on the brown paper bags preclude all rational conclusions but that the defendant knew the nature of the marijuana in the bags, knew its location, and exercised dominion over it. *See State v. Francoeur supra*. The defendant's assertion that Stephen Heuer owned the suitcases is unavailing because even if the suitcases belonged to Heuer, the only rational conclusion is that the defendant had non-exclusive possession of them. *See State v. Comeau supra*.

Finally, the defendant argues that the trial court erred in denying her motion for reconsideration in which she argued that the evidence did not support the guilty verdict. Because we have upheld the court's verdict, we reject this claim.

*Affirmed.*

All concurred.