Merrimack
No. 90-515

THE STATE OF NEW HAMPSHIRE

v.

AL JAROMA

August 31, 1993

*Jeffrey R. Howard*, attorney general (*William H. Lyons*, senior assistant attorney general, on the brief and orally), for the State.

*Murphy, McLaughlin, Hemeon & Lahey*, of Laconia (*Philip T. McLaughlin* and *Janice L. McLaughlin* on the brief, and *Mr. McLaughlin* orally), for the defendant.

BROCK, C.J.   The defendant, Al Jaroma, was convicted of burglary, RSA 635:1 (1986), after a jury trial in Superior Court (*Mohl, J.*). On appeal, he contends that the trial court: (1) erred when it denied his motions to suppress and found that the police had reasonable articulable suspicion to stop his vehicle; (2) erred when it denied his motion to suppress and found that the police had probable cause to arrest him for loitering and prowling; (3) erred when it held that his arrest under the loitering and prowling statute did not violate his State right against unreasonable searches and seizures; (4) deprived him of his right to an impartial jury and fair trial by refusing to ask the potential jurors certain *voir dire* questions; (5) deprived the defendant of his right to due process and an impartial jury when it nonrandomly selected the jury's foreperson and removed that person from the alternate pool; and (6) denied him his right to effective assistance of counsel at sentencing. For reasons that follow, we affirm.

At approximately 4:30 a.m. on June 20, 1989, Allenstown Police Officer Edwin Fournier observed the defendant drive out of the parking lot of several businesses near the Allenstown Convenience Store onto Route 3, without yielding, at approximately 30 miles per hour. Knowing that the defendant's vehicle did not belong to any of

the business owners, that all of the businesses were closed, and that there had been several burglaries in the area over the past year, the officer became suspicious. Prior to stopping the vehicle in Hooksett, the officer learned that it had been leased from Knox Leasing Company. After the stop, the officer asked the defendant for his license and registration. The defendant produced his license, but could not find a registration or papers from a leasing company. After checking the defendant's license, the officer became aware that the defendant was a known burglar.

The officer then returned to his cruiser to request further information and a backup from the Hooksett police. While in his cruiser, Officer Fournier noticed the defendant duck down in his car. Concerned that the defendant might be concealing weapons, the officer used his loudspeaker to order the defendant to exit the car and place his hands on the front of the police cruiser. The officer then conducted a pat down search for weapons, *see Terry v. Ohio*, 392 U.S. 1 (1968), and checked the front seat of the car. The officer found no weapons but observed two bank bags under the seat of the car, which he neither examined in detail nor removed at that time.

After asking the Hooksett police to check businesses in the area of the Allenstown Convenience Store, Officer Fournier asked the defendant additional questions about the car and why he had been in the area at 4:30 a.m. The defendant gave the following responses. The vehicle was leased and he had borrowed it from his friend, Sandra Fisher. He did not know her address or telephone number. He left Dover at 11:00 p.m. after boating with a friend, whose name he did not know. He stopped on Route 28 to sleep, and when he awoke, he continued on his way to Allenstown, where he stopped behind the businesses to urinate. Officer Fournier told the defendant that he had been patrolling Route 28 during the time in which the defendant claimed he had stopped to sleep and he did not see the defendant's car. After listening to the defendant offer a different explanation as to his whereabouts that night, Officer Fournier concluded that the defendant was being deceitful and arrested him at approximately 5:07 a.m. for loitering and prowling in violation of RSA 644:6 (1986). The defendant was later charged with violating RSA 644:6.

Officer Fournier then asked the defendant if he could look in the trunk of the vehicle. The defendant agreed but then stated that he did not have a trunk key. When the officer pointed out that the trunk could be opened by pushing a button, the defendant refused to open it. The defendant's car was then towed, and the defendant was taken

to the police station. At the station, Officer Fournier learned that the Allenstown Convenience Store had been burglarized and a Hooksett Bank deposit bag was missing. Officer Fournier obtained a warrant to search the car that the defendant was driving and found the instrumentalities of a burglary. The defendant subsequently was charged with burglary.

The Hooksett District Court (*Kfoury*, J.) dismissed the loitering and prowling charge, finding that the stop and arrest were invalid. The validity of the stop and arrest was relitigated in superior court on motions to suppress evidence and dismiss the burglary charge. The superior court denied these motions, and the defendant was convicted of burglary. He appeals.

The defendant argues that the Superior Court (*Dunn*, J.) erred when it reached the issues of whether there existed articulable suspicion to stop the defendant's car and probable cause to arrest the defendant because the superior court was "totally controlled by the factual finding" of the Hooksett District Court (*Kfoury*, J.). Because this issue was not raised below, it is not preserved for appellate review. *See State v. Dayutis*, 127 N.H. 101, 104, 498 A.2d 325, 328 (1985).

The defendant argues that even if the district court's findings are not binding on the superior court, the superior court erred in finding that Officer Fournier's initial detention of the defendant was a valid investigatory stop. The defendant contends that the stop violated his State and federal constitutional rights to be free from unreasonable searches and seizures. N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV.

We independently consider the defendant's claims first under the State Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), citing to federal law only as an aid in our analysis, *State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Because the federal law offers no greater protections to be free from unreasonable searches and seizures, we make no separate federal analysis. *See id.*

██ A law enforcement officer is permitted to temporarily detain a suspect for investigatory purposes on grounds less than probable cause if the officer has a reasonable suspicion based on "specific and articulable facts which, taken together with rational inferences from those facts," leads him to believe that the person detained has committed or is about to commit a crime. *State v. Kennison*, 134 N.H. 243, 246–47, 590 A.2d 1099, 1101 (1991) (quotations omitted). Officer Fournier had an articulable basis for the suspicion that rea-

sonably led him to believe that the defendant may have committed a crime. The officer knew the area, knew that several burglaries had occurred at local businesses within the past year, observed the defendant's vehicle emerge from behind a commercial building at 4:30 a.m. and enter onto a main street at approximately 30 miles per hour without yielding, knew that the businesses would not have been open for several hours, and knew that the vehicle did not belong to an owner of any of the businesses. Taking these facts together with the reasonable inferences therefrom, the officer had a sufficient basis to make an investigatory stop.

The defendant next argues that the Superior Court (*Dunn*, J.) erred when it found that the police had probable cause to arrest him for loitering and prowling in violation of RSA 644:6. He contends that the arrest was made without probable cause in violation of part I, article 19 of the New Hampshire Constitution.

"Probable cause to arrest exists when the arresting officer has knowledge and trustworthy information sufficient to warrant a person of reasonable caution and prudence in believing that the arrestee has committed an offense." *State v. Vachon*, 130 N.H. 37, 40, 533 A.2d 384, 386 (1987). When determining whether the police had probable cause to arrest, the court should review "reasonable probabilities and not the amount of evidence required to sustain a conviction or to make out a *prima facie* case." *State v. Birmingham*, 122 N.H. 1169, 1172, 453 A.2d 1329, 1331 (1982). The determination of probable cause must be viewed in the light of "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *State v. Stevens*, 121 N.H. 287, 290, 428 A.2d 1241, 1243 (1981) (quotations omitted).

The trial court did not err in finding that the officer had probable cause to arrest for a violation of RSA 644:6. Under that statute "[a] person commits a violation if he knowingly appears at a place, or at a time, under *circumstances that warrant alarm* for the safety of persons or property in the vicinity." RSA 644:6, I (1986) (emphasis added). The statute lists four circumstances that may be considered in determining whether such alarm is warranted, including, but not limited to, when the actor:

"(a) Takes flight upon appearance of a law enforcement official or upon questioning by such an official.

(b) Manifestly endeavors to conceal himself or any object.

(c) Has in his possession tools or other property which would lead a reasonable person to believe a crime was about to be perpetrated.

(d) Examines entrances to a structure which the actor has no authority or legitimate purpose to enter."

RSA 644:6, I (a)–(d) (1986). It also provides that, prior to any arrest under the statute, the officer "shall afford the actor the opportunity to dispel any alarm which would otherwise be warranted, by requesting [the actor] to identify himself and give an account for his presence and conduct." RSA 644:6, II (1986). However, "[f]ailure to identify or account for oneself, absent other circumstances, . . . shall not be grounds for arrest." *Id.*

■ Based on the foregoing facts, the officer justifiably found reason for alarm for the safety of property. Officer Fournier had observed the defendant quickly depart from the parking lot of a commercial building at 4:30 a.m., a time at which all the businesses were closed. The officer knew that there had been several burglaries in the area during the past several months, and upon stopping the vehicle, learned that the defendant was not an owner or employee of any of the businesses. Moreover, shortly after stopping the defendant, the officer became aware that the defendant had a reputation as a burglar. The officer reasonably believed that the defendant's presence in the parking lot warranted alarm for the safety of property in the vicinity, and he correctly followed the statute by affording the defendant an opportunity to dispel any alarm. Based on the fact that the defendant's answers did not dispel the officer's alarm, and that the circumstances surrounding the defendant's departure from behind the building reasonably warranted alarm for the safety of property, the officer lawfully arrested the defendant for loitering and prowling.

Regardless of the existence of probable cause, the defendant argues that RSA 644:6 is unconstitutionally vague on its face and as applied to him, and unconstitutionally overbroad. He argues that because the arrest was pretextual and made pursuant to a void statute, all fruits of the arrest and subsequent search should be suppressed under the exclusionary rule and his conviction vacated. He contends that the Superior Court (*Mohl*, J.) erred in holding that even if RSA 644:6 is later held to be unconstitutional, the evidence derived from the arrest should not be suppressed because the officer relied in good faith on an apparently valid statute. *See State v. Turmelle*, 132 N.H. 148, 154, 562 A.2d 196, 200 (1989). He argues that the trial court's ruling violated his State constitutional right to be free from unreasonable searches and seizures. *See* N.H. CONST., pt. I, art. 19.

■ The exclusionary rule "serves the objective of deterring future unlawful police conduct by denying the police the benefit of all of

the products of that conduct." *State v. Gravel*, 135 N.H. 172, 181, 601 A.2d 678, 683 (1991) (citations omitted). Given that the record supports the conclusion that the officer had probable cause to make the arrest under RSA 644:6, did not use the statute as a pretext for the arrest, and acted in good faith reliance on the statute's validity, the deterrence rationale would not be served by suppressing the evidence even if we were to hold RSA 644:6 unconstitutional. *See id.; see also Turmelle*, 132 N.H. at 154, 562 A.2d at 200. Accordingly, we find no need to address the defendant's contention that the statute is unconstitutional, and conclude that the evidence obtained pursuant to the arrest did not violate the defendant's rights under part I, article 19 of the New Hampshire Constitution.

The defendant next argues that he was denied his State and federal rights to an impartial jury, and thus a fair trial, when the Superior Court (*Mohl*, J.) nonrandomly selected the jury foreperson and exempted that person from discharge as an alternate. *See* U.S. CONST. amend. VI; N.H. CONST., pt. I, arts. 15, 35. He also makes a fleeting reference to a purported denial of his State and federal due process rights. The defendant does not distinguish his due process claims from those involving his right to an impartial jury and a fair trial. Thus, we address only whether the court's procedure denied him his right to an impartial jury and fair trial.

Prior to trial, the trial judge informed the jury his practice is "to select the juror who will serve as the alternate in the case by lot at the conclusion of the case." Although alternate jurors are generally selected prior to trial, *see* RSA 500-A:13, II (a) (1983) ("The alternate jurors shall . . . [b]e sworn with and seated near the jury . . . ."), the parties did not object to this procedure. The defendant did timely object, however, when the judge nonrandomly selected juror number four to be the jury foreperson prior to choosing the alternate through random selection. In overruling the objection, the court stated, "I have designated the foreperson with this jury as I have done with virtually every criminal case I have tried in the last year and a half."

We proceed by considering the defendant's rights under State law, *see State v. Ball*, 124 N.H. at 231, 471 A.2d at 350, addressing "federal constitutional issues only insofar as federal law would provide greater protection." *State v. Castle*, 128 N.H. 649, 651, 517 A.2d 848, 849 (1986).

In asserting that he has been denied a fair trial, the defendant does not contend that juror number four was in fact biased. All of the jurors empaneled, including the foreperson and the alternate,

vowed to be impartial. The trial court found juror number four, as well as the other jurors, to be qualified, and the defendant did not challenge the court's findings. *See State v. Smart*, 136 N.H. 639, 653, 622 A.2d 1197, 1203 (trial court's determination of juror impartiality entitled to special deference), *cert. denied*, 114 S.Ct. 309 (1993). "Therefore, the right to trial by an impartial jury secured by part I, article 35 of the New Hampshire Constitution, *see State v. Sawtelle*, 66 N.H. 488, 32 A. 831 (1891), is not directly implicated in this case." *Castle*, 128 N.H. at 651, 517 A.2d at 849. The defendant has failed to demonstrate that the court's action rises to the level of a constitutional violation or that he was prejudiced by the selection. Absent a finding of prejudice in this case, we will not reverse. *See State v. Reynolds*, 131 N.H. 291, 295, 556 A.2d 298, 300 (1988).

The defendant next argues that the Superior Court (*Mohl*, J.) abused its discretion when it asked only one of three requested *voir dire* questions, thereby depriving him of his federal and State rights to a fair trial. We do not agree.

Because both the sixth amendment of the United States Constitution and part I, article 15 of the New Hampshire Constitution "guarantee the right of a defendant to a trial by a fair and impartial jury," *State v. Smart*, 136 N.H. at 646, 622 A.2d at 1202, we consider the defendant's rights under State law, *see Ball*, 124 N.H. at 231, 471 A.2d at 350.

■ RSA 500-A:12 (1983 & Supp. 1992) sets out the basic requirements of juror *voir dire*. These requirements are "supplemented with inquiry regarding the presumption of innocence and the burden of proof in criminal cases." *State v. Colbath*, 132 N.H. 708, 709, 571 A.2d 260, 260–61 (1990). *Voir dire* examination serves to ensure the impartiality of the trier of fact "by exposing possible biases, both known and unknown, on the part of potential jurors." *State v. Goding*, 124 N.H. 781, 783, 474 A.2d 580, 581 (1984) (quotations omitted). The extent of the *voir dire* examination is within the trial court's broad discretion. *State v. Sullivan*, 121 N.H. 301, 303, 428 A.2d 1247, 1249 (1981). We will not disturb the trial court's exercise of discretion "unless it is manifestly against the law and the evidence." *State v. Bone*, 131 N.H. 408, 411, 553 A.2d 775, 777 (1989) (quotation omitted).

■ Prior to trial, the defendant submitted three requests for supplemental jury *voir dire* questions, all of which involved the credibility of police officers as witnesses. The defendant alerted the trial court that he wished the following questions to be asked because he

believed that he had been arrested for loitering in retaliation for a suit he had brought against the Hooksett Police Department.

"1. This case is likely to involve contrasting and competing versions of events — one coming from the accused and one coming from someone who was then employed as a police officer. Are you more likely to believe the testimony of a police officer than that of a private citizen?

2. Do you believe that a police officer would never purposely falsely accuse someone of a crime when the officer knew the person was innocent?

3. Do you believe that a police officer would never manufacture or create evidence to falsely convict someone?"

The court asked the first question, but refused to ask the others. By asking potential jurors if they believed that a police officer was more credible than a private citizen, the trial court was able to identify persons who would not believe that the police might manufacture evidence to frame a suspect. By asking the first supplemental *voir dire* question, the court provided the defendant with sufficient information to intelligently challenge potential jurors. We, therefore, find no abuse of discretion and, thus, no constitutional violation.

Lastly, the defendant argues that he was denied his State and federal constitutional rights to effective assistance of counsel when the Superior Court (*Mohl*, J.) refused to provide him with new counsel at sentencing. Prior to sentencing, the defendant filed an ineffective assistance claim against his trial counsel, and trial counsel moved to withdraw. At sentencing, the defendant stated that he did not feel qualified to represent himself *pro se* and requested new counsel. The trial court ordered that the sentencing continue with trial counsel.

Because the standard for attorney performance is the same under the New Hampshire and Federal Constitutions, *see State v. Chase*, 135 N.H. 209, 211, 600 A.2d 931, 933 (1991), we consider the defendant's claim under the State Constitution, *see id.*, using federal law only as an aid in our analysis. *See State v. Faragi*, 127 N.H. 1, 4, 498 A.2d 723, 726 (1985).

We have held that "[a] defendant's own dissatisfaction with his attorney which is not founded upon a sufficient, articulated basis is not reason enough to require a court to grant a defendant's request that new counsel be appointed." *State v. Mikolyski*, 121 N.H. 116, 117, 427 A.2d 20, 21 (1981). Absent an abuse of discretion, we will not disturb a trial court's decision as to "[w]hether a continuance

should be granted in order to enable a defendant to obtain new counsel." *Id.* at 118, 427 A.2d at 21.

After reviewing the trial and sentencing transcripts, we find no abuse of discretion. Moreover, we note that the defendant has failed to demonstrate that "there is a reasonable probability that the result of the [sentencing] proceeding would have been different" had his appointed counsel performed differently. *State v. Fennell,* 133 N.H. 402, 405, 578 A.2d 329, 331 (1990); *see Strickland v. Washington,* 466 U.S. 668, 687 (1984). Thus, he cannot prevail on his ineffective assistance claim with respect to sentencing.

*Affirmed.*

All concurred.