Jaroma v. Cunningham                    CV-94-601-JD   11/14/95

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Al Jaroma

    v.                                    Civil No. 94-601-JD

Cunningham, Warden
New Hampshire State Prison


O R D E R


Al Jaroma, proceeding pro se and in forma pauperis,

petitions for a writ of habeas corpus attacking the

constitutionality of his state court conviction for burglary.

The state, on behalf of the warden, has moved for summary

judgment, relying in large part on the decisions of the state

courts in Jaroma's direct appeal and state habeas corpus

proceedings.


BACKGROUND[1]

Jaroma was convicted in June 1990 on one count of burglary

and sentenced to serve two and one-half to five years at the New

---

[1]The court accepts the facts determined by the New Hampshire
Supreme Court and reported in State v. Jaroma, 137 N.H. 562
(1993), as they are undisputed.  See 28 U.S.C.A. § 2254(d)
(1994).

Hampshire State Prison.[2]  The burglary charge arose from a stop

and arrest after an Allenstown police officer saw Jaroma drive

out of the parking lot of several businesses, including the

Allenstown Convenience Store, at 4:30 a.m., when all of the

businesses were closed.  When Jaroma could not produce a vehicle

registration and the officer identified him from his drivers'

license as a known burglar, the officer radioed police to check

the nearby businesses.  Jaroma then offered different versions of

his whereabouts during the evening and the officer concluded that

he was lying.  The officer arrested Jaroma for loitering and

prowling in violation of N.H. Rev. Stat. Ann. ("RSA") § 644:6.

After Jaroma and the officer arrived at the police station, the

officer learned that the Allenstown Convenience Store had been

burglarized and obtained a warrant to search Jaroma's car.

Jaroma was first charged with violating the loitering statute,

and later with burglary of the convenience store.

The Hooksett District Court dismissed the loitering charge

against Jaroma after finding that the stop and arrest was invalid

because the officer had no reasonable basis for stopping Jaroma.

_____

[2]Jaroma has completed his sentence for this conviction but
is now serving a consecutive sentence and remains in prison.  The
court previously found unavailing the state's argument that
dismissal is warranted because Jaroma is no longer in custody for
the conviction he is challenging.  See Order, June 8, 1995
(citing Garlotte v. Fordice, 115 S. Ct. 1948 (1995)).

Before his trial on the burglary charge in the superior court, Jaroma's counsel moved to suppress the evidence discovered in his car, again challenging the validity of the stop and arrest. However, the superior court held that when the officer stopped Jaroma, he had a sufficient basis to make an investigatory stop, and that he then had probable cause to arrest Jaroma under the loitering statute. The superior court denied the motion to suppress and Jaroma was later convicted on the burglary charge. Following his conviction, Jaroma moved for a new trial, arguing the ineffective assistance of trial counsel on the suppression issue. The superior court denied his motion on April 2, 1993. Thereafter, he separately appealed his conviction and the court's denial of his motion for a new trial.[3]

In his appeal challenging his conviction, Jaroma argued that the trial court erred in denying his motions to suppress; in admitting evidence seized as a result of a constitutionally infirm search of his car; and in denying him his rights to an impartial jury, due process, and a fair trial by failing to ask all submitted voir dire questions and selecting the jury foreperson. The New Hampshire Supreme Court held that Jaroma had

_____

[3]Jaroma was represented by two different lawyers during the preparation and trial on the burglary charge. Following his conviction, two other lawyers were appointed to represent him in moving for a new trial and on appeal.

not preserved for appeal his argument that the doctrine of collateral estoppel barred the prosecution from relitigating the legality of the stop and arrest in the superior court, and affirmed the superior court on the other issues raised on appeal. It later summarily affirmed the superior court's denial of Jaroma's motions for a new trial.

Jaroma then petitioned pro se for a writ of habeas corpus in state court, alleging that the police used false testimony to "set up" his burglary conviction and that both the prosecutor and his own counsel knew of the false testimony but did nothing. He again argued that the district court's decision on the invalidity of the stop and arrest should have barred relitigation of the issue in superior court. He challenged the legality of the search of his car, alleging that the trunk was searched once before the police obtained a warrant and that the warrant they obtained was invalid, and argued ineffective assistance of counsel based on his lawyer's failure to file a motion to suppress on this ground. The superior court denied the petition in an order dated February 7, 1994, and the supreme court declined the appeal. Jaroma then filed his habeas corpus petition in this court.

## DISCUSSION

In habeas corpus proceedings, as in other civil actions,[4] summary judgment is only appropriate if the facts taken in the light most favorable to the nonmoving party show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 4 (1st Cir. 1994). On issues that the nonmoving party must prove at trial, the moving party initially need only allege the lack of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The nonmoving party cannot rely on the pleadings alone to oppose summary judgment, but must come forward with properly supported facts to demonstrate a genuine factual dispute for trial. Id. at 323-24 (1986). When the facts are undisputed, to prevail the moving party must show that it is entitled to judgment as a matter of law. Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 764 (1st Cir. 1994).

Because Jaroma is a pro se petitioner, the court construes his pleadings broadly but, nevertheless, requires him to meet the summary judgment standard. See, e.g., United States v. Michaud, 925 F.2d 37, 41 (1st Cir. 1991). Therefore, the court considers

---

[4] Fed. R. Civ. P. 81(a)(2); see also Williams v. Scott, 35 F.3d 159, 161 (5th Cir. 1994), cert. denied, 115 S. Ct. 959 (1995).

5

the state's motion for summary judgment and Jaroma's response in light of the applicable summary judgment standard and also restates Jaroma's claims where necessary.

## Claims in Support of Habeas Relief

Jaroma's petition for a writ of habeas corpus is divided into eight separately numbered and captioned issues. These are: "Issue I, Res Judicata-Collateral Estoppel Doctrine"; "Issue II, Exculpatory Evidence, Appointment of Counsel and Services Other Than Counsel"; "Issue III, Illegal Search and Seizure"; "Issue IV, Prosecutorial Misconduct"; "Issue V, Ineffective Assistance of Counsel"; Issue VI, Constitutionality of New Hampshire's Statute R.S.A. 644:6 Loitering and Prowling"; "Issue VII, Voir Dire of the Jury Panel"; and "Issue VIII, Due Process and Impartial Jury Selection." However, many of the allegations are repeated in different issues and the titles do not accurately reflect the claims made, causing some confusion about the grounds raised for habeas relief.

Despite its organization, captions, and repetitious allegations, in essence the petition presents six grounds for habeas relief: (1) violation of due process by allowing the state to relitigate the validity of the stop; (2) ineffective assistance of counsel based on several alleged deficiencies; (3)

6

prosecutorial misconduct; (4) invalidity of the search of the car based on the unconstitutionality of the New Hampshire loitering statute; (5) violation of due process and the right to a fair trial by the trial court's decision not to give all requested voir dire questions, and (6) violation of due process and the right to a fair trial by the court's designation of a jury foreperson before choosing alternate jurors.  The court addresses each claim seriatim.

A.  Due Process: Relitigating the Validity of the Stop

Jaroma argues that the superior court erred by allowing the state to relitigate the lawfulness of the stop in superior court after the district court had determined that the stop was unlawful.  He suggests that this claim is based upon the doctrine of collateral estoppel.  However, in this court, his claim is more properly characterized as a due process violation.[5]  The state contends that Jaroma is procedurally barred from raising this issue in a federal habeas corpus petition.

---

[5]Jaroma need not litigate his due process claim in state court before raising it here because the state courts would decline to consider the claim for the same reason that the New Hampshire Supreme Court declined to consider Jaroma's collateral estoppel claim.  Under these circumstances, express exhaustion is not required.  See Coleman v. Thompson, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion . . . .").

7

A procedural default in state court based upon an independent and adequate state ground will bar habeas corpus relief in federal court unless the petitioner can show either cause for the default and prejudice resulting from an alleged violation of federal law, or that a "fundamental miscarriage of justice" will result if the claim is not considered. Coleman, 501 U.S. at 750. Jaroma argues that his failure to object to the relitigation of the issue in state court was caused by his counsel's ineffective assistance. In some circumstances, ineffective assistance of counsel can be sufficient cause to excuse a procedural default. See Murray v. Carrier, 477 U.S. 478, 486 (1986). However, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Id.

Jaroma's claim is based on the premise that a state district court can issue findings that are binding in a subsequent felony trial in superior court. In 1981, the New Hampshire Supreme Court expressly rejected this premise on the ground that it would undermine the exclusive jurisdiction of the superior court over the ultimate resolution of felony cases. See State v. Stevens, 121 N.H. 287, 288-89 (1981). Accordingly, Jaroma's trial counsel could not be considered ineffective for failing to raise an issue

that was bound to fail.  The court grants summary judgment on this issue.


B.  Ineffective Assistance of Counsel

Jaroma alleges that his trial and post-trial counsel were ineffective for a number of reasons.  Specifically, he contends that counsel failed to:  (1) investigate his claim; (2) make effective use of exculpatory evidence; (3) inform the jury that certain incriminating evidence was false; (4) challenge the validity of the search warrant effectively; and (5) raise and argue certain issues properly in post-trial proceedings.  The state argues that Jaroma procedurally defaulted on several of his ineffective assistance claims and denies that counsel was ineffective.  However, the state has made no attempt to develop its arguments other than to cite without explanation to several state court orders.  Under these circumstances, the court declines to address its argument.[6]

---

[6]  The state's entire argument on the ineffective assistance issue is as follows:
> Issue III and Issue V of the Petition raise allegations of ineffective assistance of counsel.  In a number of pleadings and for a variety of reasons, the petitioner has raised allegations that all of his court appointed counsel were ineffective.  All of these claims have been rejected both by the New Hampshire Supreme Court and the Superior Court.  See State v. Jaroma, 137 N.H. at 571-72; Order, dated April 2, 1993; Order dated February 7, 1994.  For the reasons set forth in those

9

C.  Prosecutorial Misconduct

Jaroma alleges the prosecutor knew that his case against Jaroma was based on false testimony and allowed a police witness to give false testimony at Jaroma's trial.  The state moves for summary judgment on this issue on the ground that Jaroma can produce no evidence to support his allegations.  In response, Jaroma explains that the prosecutor was aware of the contents of a sealed file pertaining to the police witness and knew that it undermined his credibility.[7]  In his petition, he also acknowledges that the prosecutor informed the court of the witness's credibility problem during trial.

Jaroma has produced no evidence to show that perjured testimony was given during trial or that the prosecutor withheld exculpatory evidence from the defense.  Although he makes general references to the trial transcript in support of his claims of perjury, these references are insufficient to establish a dispute of material fact.  Jaroma has not met his burden in opposing

---

decisions, the Court should also reject the petitioner's ineffectiveness allegations.

[7]To the extent Jaroma argues that the prosecutor withheld exculpatory evidence from him (or his defense), the facts do not support his claim.  The only exculpatory evidence he has discussed is the sealed file of the police officer witness, which was provided to Jaroma's trial counsel.  See Superior Court Order dated February 7, 1994, at *4.  Jaroma acknowledges as much in his allegations of ineffective assistance of counsel in Issue V.

summary judgment on this issue, and the court grants summary judgment on the issue of prosecutorial misconduct.

D. Admissibility of Evidence Seized from Jaroma's Car

Jaroma alleges that his arrest under New Hampshire's loitering statute, RSA § 644:6, was invalid and that the evidence discovered in the subsequent search of his car should have been suppressed because the statute is unconstitutionally vague and overbroad and violates the right to travel. The state moves for summary judgment on this issue, relying entirely on the analysis of the issue in the state's brief to the New Hampshire Supreme Court on Jaroma's direct appeal and on the supreme court's decision. In its brief for the appeal, the state primarily addressed the constitutionality of the statute under state law, and also argued that the court should adopt a good-faith exception to the exclusionary rule that would protect the police conduct even if the statute were deemed invalid. The supreme court addressed the issue only under state law "[b]ecause the federal law offers no greater protections to be free from unreasonable searches and seizures," and held that it did not need not to address the constitutionality of the statute because the officer acted in good-faith reliance on the validity of the statute and that his conduct did not violate the New Hampshire

Constitution. <u>Jaroma</u>, 137 N.H. at 566, 568-69; <u>see also</u> <u>State v. Canelo</u>, 653 A.2d 1097, 1111 (N.H. 1995) (dissenting opinion). Thus, the supreme court's analysis does not support the state's motion for summary judgment in a federal habeas proceeding.

In <u>Michigan v. DeFillippo</u>, the United States Supreme Court held that an arrest based on probable cause and made in good-faith reliance on the validity of a "stop and identify" ordinance was not rendered invalid, requiring suppression of evidence from a search incident to the arrest, when the ordinance was subsequently declared unconstitutional. 443 U.S. 31, 40 (1979). Thus, federal law recognizes an exception to the exclusionary rule when an arrest is based on probable cause under a presumptively valid law. <u>Id.</u> at 38-40. Determination of probable cause is based on what a reasonably prudent and cautious person would believe under the circumstances. <u>Id.</u> at 37, 38.[8]

The New Hampshire loitering statute is not "so grossly and

_____

[8]Jaroma contends that he was arrested as a pretext to allow the police to manufacture evidence in order to charge him with another crime. However, a stop or arrest, alleged to be merely pretextual, does not violate the Fourth Amendment "as long as a reasonable officer in the same circumstances <u>could have</u> stopped the car for the suspected . . . violation." <u>United States v. Whren</u>, 53 F.3d 371, 375 (D.C. Cir. 1995) (discussing related rules in other circuits), <u>petition for cert. filed</u> (Aug. 31, 1995); <u>accord</u> <u>United States v. Willis</u>, 61 F.3d 526, 530 (7th Cir. 1995). Thus, the evaluation of the justification for an allegedly pretextual arrest is an objective analysis that is not dependent on the subjective state of mind of the arresting officer.

12

flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws," id. at 38, and had not been declared unconstitutional at the time of the arrest. Thus, the statute was presumptively valid. Jaroma does not contest the existence of probable cause to arrest him under the loitering statute but argues that the arrest lacked probable cause only because of the unconstitutionality of the statute. Therefore, even if the New Hampshire loitering statute were declared unconstitutional, Jaroma's arrest was based on probable cause that he had violated the statute and would be valid under the good-faith exception announced in DeFillippo. Summary judgment is granted as to this issue.[9]

E. Voir Dire

Jaroma contends that the trial court impaired his right to due process and a fair trial by refusing to give two of his three requested voir dire questions. Again, the state relies entirely on its brief on appeal, which presented only state law, and the

_____

[9]Alternatively, the court could grant summary judgment because Jaroma litigated this issue thoroughly in state court and "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494-95 (1976).

supreme court's decision, which considered the issue only under state law. Because the state has provided no analysis of the voir dire issue under federal law, the court declines to consider its argument.

F. Selection of the Jury Foreperson

Jaroma also challenges as a Sixth Amendment violation the trial court's non-random selection of the jury foreperson and its exemption of that person from being designated an alternate. He argues that the selection process denied him a fair trial in violation of the Sixth Amendment by creating a "super juror" designated by the court who could not be exempted from service as an alternate. Jaroma does not challenge the selection of the jury panel as a whole from which the foreperson was designated.

Absent circumstances showing bias or imbuing the foreperson with extraordinary authority, appointment of the jury foreperson by the judge before designating alternates does not violate either due process or the defendant's right to a fair trial. See Hobby v. United States, 468 U.S. 339, 347 (1984) (holding that as long as grand jury, as a whole, was properly constituted, selection of one member as foreperson does not taint the process); United States v. Cannon, 903 F.2d 849, 857 (1st Cir.) ("no valid reason to prohibit a trial judge from appointing the

14

foreperson" absent evidence in the record of prejudice), <u>cert. denied</u>, 498 U.S. 1014 (1990); <u>United States v. Machor</u>, 879 F.2d 945, 956 (1st Cir. 1989), <u>cert. denied</u>, 493 U.S. 1094, and <u>cert. denied sub nom.</u> <u>Brito-Mejia v. United States</u>, 493 U.S. 1081 (1990). Because Jaroma has not carried his burden of adducing evidence of a constitutional violation caused by the court's selection of the jury foreperson, summary judgment in favor of the state is appropriate on this issue.

<u>Conclusion</u>

The state's motion for summary judgment (document no. 26) is granted as to the petitioner's claims based on (1) the failure of superior court to apply the doctrine of collateral estoppel at the suppression hearing; (2) prosecutorial misconduct; (3) the inadmissibility of evidence seized during the search of Jaroma's automobile; and (4) the court's selection of jury foreperson. The state shall have until December 1, 1995, to file a supplemental memorandum of law, based on federal law, in support of its motion for summary judgment on the issues of ineffective

15

assistance of counsel and improper voir dire.  The petitioner

shall have until December 22, 1995, to file a reply.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
Chief Judge
November 14, 1995

cc:  Al Jaroma, pro se
     John C. Kissinger, Esquire

16